Harry Cone, as Executor of Manuel Cominsky, Deceased, Respondent-Appellant, *v.* Acme Markets, Inc., Appellant-Respondent, et al., Defendants.

Fourth Department, May 18, 1973.

*Kernan & Kernan* (*Earle C. Bastow* of counsel), for appellant-respondent.

*Rossi, Cohen & Durso, P. C.* (*Daniel S. Cohen* of counsel), for respondent-appellant.

MARSH, J. This is an appeal in an action brought for a declaratory judgment concerning the rights of the parties pursuant to certain provisions of a lease dated February 22, 1955, as amended, between defendant North Utica Shopping Center, Inc., lessor, and defendant-appellant-respondent, Acme Markets, Inc., lessee. Plaintiff-appellant-respondent Cone appeals from so much of the judgment as declared plaintiff, as a shareholder of North Utica Shopping Center, Inc., bound by and subject to a restrictive covenant in the lease. Acme appeals from that part of the judgment which declared that the measurement of the mile restriction in the lease be determined from the perimeter of the subject store rather than the outside perimeter of the entire shopping center.

Plaintiff is the executor of the will of Manuel Cominsky who at the time of his death, as well as at every other pertinent time, was the owner of 50% of the capital stock of North Utica. The other 50% was owned by defendants Milton Abelove and Esther Myers.

North Utica owned a parcel of land in the northern part of the City of Utica on which was erected a shopping center. On February 22, 1955, North Utica leased a store in that shopping center to Acme. The language of the lease is the focal point of this lawsuit and provides that: "Lessor agrees that it will not during the term of this lease or any renewal thereof lease or rent or permit the use, renting or subletting of any of the stores presently proposed to be built or which may in the future be built on said premises shown on Exhibit 'A' or on any property within one mile of the perimeter of the herein involved premises owned or controlled by it directly or indirectly for the sale of food for off-the-premises consumption".

Exhibit " A ", referred to in the lease, reflected the original shopping center. New land adjacent to the center was subsequently acquired by North Utica and Exhibit " A " was enlarged to reflect this change of events in the 1958 amendment to the lease.

In addition to owning 50% of North Utica and being a director therein, Cominsky owned substantial (majority control) shares of stock in several " Chicago Market " corporations engaged in the business of operating retail food stores in the Utica area. At the time of the lease there were two such corporations, doing business from two locations, one in the City of Utica and the other in the Village of New Hartford. At the time of his death on June 6, 1971, there were 11 stores and 7 corporations. On September 26, 1970, the corporations had consolidated into one corporation known as Chicago Market Enterprises, Inc. (Chicago) which continued the retail food business of the merged corporations.

There was testimony that one, Glick, in his capacity as president of " Chicago " has been in charge of the general management of the corporations since 1965. Prior to that time Cominsky managed the corporation or corporations.

In June of 1970 a nominee of Chicago Markets Enterprises, Inc. obtained an option on property known as the DiNitto property located on Herkimer Road about a mile from the lessor North Utica Shopping Plaza and in 1971 the option was exercised and the DiNitto property was transferred to Chicago. Chicago intends to build a supermarket on the DiNitto property in excess of 2,500 square feet which would be in violation of the restrictive covenant in paragraph 11 of the lease between North Utica and Acme, if it be held that the restriction applies to North Utica stockholders, that the DiNitto property is owned directly or indirectly by North Utica within the meaning of the lease clause, and that properly measured, the DiNitto property is within the one-mile limitation provided in the lease.

As a general rule, stockholders are not bound by agreements and actions of the corporations in which they hold stock, absent a specific agreement with respect thereto. A strong equitable consideration will at times overcome the separate nature of the corporate structure where the parties in control of the corporation are using it to defeat a statute or equitable policy (*Matter of Guptill Holding Corp.* v. *State of New York*, 33 A D 2d 362; *Bartle* v. *Finkelstein*, 19 A D 2d 256). As a general rule in order to pierce the corporate veil there must be a demonstration of fraud or illegality (*Bartle* v. *Home Owners Co-Op*,

309 N. Y. 103). Thus if corporate officers of a bankrupt corporation use their authority to favor a creditor which the officers control, the statute prohibiting preference to debts of corporate officers will be applied disregarding the separate corporate nature of the creditor (*Bartle* v. *Finkelstein, supra*).

In this case neither fraud nor illegality in operation has been shown. In such a situation the only remaining reason for equating plaintiff with the corporate lessor, North Utica, would be the operation of the corporate business in such a manner as completely to disregard the corporate form, thus leading third parties to believe that they are dealing not with the corporation but with the individual principals (*Natelson* v. *A. B. L. Holding Co.*, 260 N. Y. 233). The record does not demonstrate the complete control commonly required to pierce the corporate veil nor the use of that control to commit the wrong complained of (*Guptill Holding Corp.* v. *State of New York, supra*).

The language of the lease does not include stockholders nor could it bind them as stockholders even if it did include them, absent their assent. There is no evidence that decedent Cominsky or his estate misused the corporate form, disregarded the corporate form in dealing with defendant Acme or committed fraud or illegality of such a nature as to require disregarding the corporate structure. The situation presented is one where two corporate entities entered into a contractual arrangement and their individual stockholders cannot be held bound by such an arrangement absent their contractual assent.

Consideration of the question of whether the DiNitto property comes within the one-mile restriction imposed by paragraph 11 of the lease requires an answer in the affirmative. North Utica is an integrated shopping plaza which provides the benefits of a shopping plaza to each of its tenants and which benefits encompass the limits of the entire developed shopping plaza area. One of the prime reasons for the development of such plazas is the expanse of parking spaces which permits ease of access by automobiles to each of the individual businesses. A tenant in a shopping plaza does not merely lease a building which houses his retail establishment, but he leases a right to have his customers park any place in the common plaza area designated for parking and to have his customers use the ingress and egress provided by the entire plaza complex. The reading of the instant lease with respect to the phraseology, "the herein involved premises", taking into consideration this recognized aspect of plaza use and occupancy, leads reasonably to a construction holding that "the herein involved premises"

encompasses the entire shopping plaza. Acme not only leases the store space, but also pays its proportionate share of the taxes, not on the store space alone, but on the entire square footage of all the plaza. Measuring from the closest easterly point of North Utica the one-mile limit extends well into the center of the DiNitto property. It must therefore be concluded that the DiNitto property is within the one-mile restriction in the lease.

The judgment should be modified by declaring that the words " the herein involved premises " as contained in paragraph 11 of the lease between North Utica Shopping Center, Inc. and Acme Markets, Inc. refer to the perimeter of the North Utica Shopping Center as shown on Exhibit A-1 annexed to said lease, and further declaring that the plaintiff is not bound as a shareholder of defendant North Utica Shopping Center, Inc. to abide by the restrictive covenant in paragraph 11 of the lease.

DEL VECCHIO, J. P., MOULE, CARDAMONE and HENRY, JJ., concur.

Judgment unanimously modified on the law and facts in accordance with opinion by MARSH, J., and, as so modified affirmed, without costs.